New York, Chicago and St. Louis Railroad Company

*v.*

Frederick Luebeck, by his next friend.

*Filed at Ottawa October 11, 1895.*

1. Railroads—*company operating road held to same care as owner.* A railroad company operating trains upon the track of another company crossing the highway, which is also crossed at the same point by tracks of other companies, is held to the same degree of care as though it owned the track upon which its trains are run-and controlled, and operated all the trains run on all the tracks.

2. Evidence—*answer that witness knew where plaintiff was going when hurt.* In an action for injuries received at a railroad crossing, the brother of plaintiff, a minor, being asked if he knew where plaintiff was going when hurt, answered, "Yes, I sent him to get some glass at Wentworth avenue." *Held,* that refusal to exclude the answer was not error, since witness stated he did not see the accident, and the answer corroborated plaintiff's witnesses as to the direction plaintiff was going when hurt, that being a point in dispute.

3. Same—*that other tracks cross highway at place of injury may be shown.* In an action for injuries at a railroad crossing, plaintiff may show, as a circumstance indicating the character of the crossing and the degree of care required, that the highway is crossed by the tracks of several companies, upon which trains usually pass in rapid succession.

4. Same—*non-expert witness may give opinion as to mental condition.* Non-expert witnesses of good common sense, who have stated their observations upon the condition of a person before and after alleged mental impairment, may state their opinions based on such observations, and make comparison of the mental condition of such person before and after the injury which is alleged to have affected his mind.

5. Same—*opinion of non-expert need not have been formed at any particular time.* It is not necessary that the impression as to mental impairment testified to by a non-expert witness must have been formed at the time the particular conduct or fact was observed. It may be the result of the observation of a continued condition or series of facts.

6. Appeals and Errors—*improper remarks of counsel—when not cause for reversal.* Comments of counsel for plaintiff in a suit against a railroad company for personal injuries, as to the inability of plaintiff to call and pay expert witnesses, are not cause for reversal, where defendant's counsel first commented upon plaintiff's failure to call a specialist.

7. SAME—*extent of recovery not open for Supreme Court.* The question whether a verdict is excessive cannot be determined by the Supreme Court, where the judgment thereon has been affirmed by the Appellate Court.

8. TRIAL—*instruction as to duty of railroad to keep flagmen at crossings.* In an action for injuries at a railroad crossing, an instruction that the absence of gates or a flagman is not, of itself, evidence of negligence, but should be considered for the purpose of showing the general condition of the crossing at the time of the injury, in determining whether defendant was guilty of negligence, is proper, where the negligence claimed is in running trains.

9. SAME—*peremptory instruction for defendant.* A peremptory instruction for defendant is properly refused where there is evidence which, if true, tends to maintain plaintiff's case.

*N. Y., C. & St. L. R. R. Co.* v. *Luebeck,* 54 Ill. App. 551, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This was an action by appellee, by his next friend, begun in the circuit court of Cook county, against appellant, for injuries alleged to have been received by being struck by one of the freight trains of appellant at the Fifty-third street crossing, in the town of Lake. The declaration contains three counts, the first charging negligence and improper conduct of defendant and its servants in the management of its train; the second, a failure to ring a bell or blow a whistle in compliance with the statute; and the third, the disregarding of an ordinance of the town of Lake limiting the speed of freight trains to six miles per hour.

Fifty-third street extends east and west, and crossing the road at right angles, north and south, are seven railroad tracks, none of which belong to appellant, but over one or more of which it had the right to, and did, operate its trains as far out as Grand Crossing. The east track of the seven was a side-track, on which, at the time of the accident, were standing a number of freight cars projecting north and extending south part of the way over

Fifty-third street.   On the third track from the east a
train of another company was moving north, blocking
the crossing, and on the fourth track a train belonging
to appellant was running south.   Appellee was struck
on the second track from the east by one of the engines
of appellant's freight trains running south, tender for-
ward.   The accident occurred in May, 1889, at which time
appellee was about sixteen years old, but the trial in the
lower court was more than four years afterwards, when
he was past twenty.   The residence of appellee and place
of business of his brother were located east of the rail-
road, and the theory of his counsel is that he was proceed-
ing from here west, but some testimony of two train-men
was to the effect that he was going east when struck.
Appellee received no external physical injury.   The evi-
dence indicates that the shock or concussion occasioned
by the engine striking him left him unconscious, and that
he remained so for eight hours, and, to some extent, in
a comatose condition for a week or more.   It is alleged
that the effect of these injuries, as shown during the four
years elapsing between the accident and the trial, has
been to leave him mentally in a condition unfit for the
transaction of ordinary business, and to impair his mind.

The case was tried in the circuit court, before a jury,
resulting in a verdict for plaintiff of $10,000.   A motion
for a new trial was overruled and judgment rendered on
the verdict.   An appeal was prosecuted from this judg-
ment to the Appellate Court for the First District, where
the judgment of the circuit court was affirmed.   From the
judgment of affirmance this appeal is prosecuted to this
court.

The errors assigned by appellant as reasons for a re-
versal are the admission of improper evidence for appel-
lee by the trial court; improper remarks made by counsel
for appellee in the argument of the case before the jury;
in the giving by the trial court of the second instruction
asked, and given by the court, on behalf of plaintiff; and

in the refusal by the court to give the first instruction asked by the defendant below, in which the court was asked to instruct the jury that the evidence offered on behalf of the plaintiff was insufficient to support the plaintiff's case as charged in the declaration. A consideration of these questions necessarily involves in the opinion a more detailed statement of the case.

Walker & Eddy, for appellant:

The testimony of the brother amounts to this: "I know where Fred was going. I know he was going west,—not because I saw him, but because I sent him from our house, which was some blocks east of the track, to get some glass on Wentworth avenue, which is some blocks west of the tracks." This conversation was had in the absence of appellant, and testimony of this character has been again and again held utterly incompetent. *Wamsley* v. *Robinson*, 63 Ill. 41; *Cotton* v. *Holliday*, 59 id. 176; *Morgan* v. *Peat*, 32 id. 281; *Aiken* v. *Hodge*, 61 id. 436; *McCausland* v. *Wonderly*, 56 id. 410.

The form of the question in this case, while objectionable, did not amount to anything. It was the objectionable matter contained in the answer which is complained of. *Pullian* v. *Nelson*, 28 Ill. 112.

A non-professional witness cannot express a general opinion as to sanity, nor his opinion, independently of stating facts and circumstances. *Clapp* v. *Fullerton*, 34 N. Y. 18; *Pelamourges* v. *Clark*, 9 Iowa, 17; *Robinson* v. *Adams*, 62 Me. 369; 16 Am. Rep. 473; *Cram* v. *Cram*, 33 Vt. 15; *Dicken* v. *Johnson*, 7 Ga. 484; *DeWitt* v. *Barly*, 17 N. Y. 340; *Irish* v. *Smith*, 8 S. & R. 578; *Hickman* v. *State*, 38 Tex. 190; 1 Rice on Evidence, 350; *VanHorn* v. *Keenan*, 28 Ill. 445; 133 N. Y. 544.

Moran, Kraus & Mayer, for appellee:

Where the surrounding circumstances render the crossing specially dangerous to travelers on the highway, as where the line is curved or there are obstructions to the

view, it is the duty of the railway to take precautions commensurate with the danger; and it is for the jury to determine whether or not the absence of any peculiar precaution is negligence. Patterson on Railway Accident Law, sec. 170; *Railroad Co.* v. *Siltman*, 88 Ill. 529; *Railroad Co.* v. *Lane*, 130 id. 116.

Mr. Justice Phillips delivered the opinion of the court:

One of the errors assigned on the record is, that the trial court admitted improper testimony on the part of appellee. Edward Luebeck, a brother of appellee, and whose place of business was east of the railroad tracks, was called as a witness, and asked if he knew where plaintiff was going at the time of the accident. His answer was, "Yes, I sent him to get some glass at Wentworth avenue." Motion was made by appellant to strike out the answer, but the court permitted it to stand, to which exception was taken by appellant. Three witnesses who observed the accident had testified that appellee was crossing the tracks from east to west, and the evident purpose of this evidence was in corroboration, as witness further stated that it was only about five minutes before the accident occurred that he had sent appellee on an errand. The record shows very clearly that the jury must have fully understood, from the testimony of the witness, that he did not see the accident, for he so states. All he knew was, that five minutes before he had started appellee on an errand which would take him west across these tracks. This evidence was so nearly connected with the accident itself, and a mere fact in corroboration of other direct and positive evidence, that there was no error, under all the circumstances, in the trial court overruling the motion made to strike out the answer.

The court, over the objection of defendant below, permitted the plaintiff to show the frequency with which

trains passed over these tracks, and that there was a
train every twenty minutes, although most of them were
trains of various other roads.    Under the first count of
the declaration this evidence was admissible.    It is to be
presumed that defendant had knowledge of the running
of these trains, and if they passed in rapid succession it
thereby made this crossing much more dangerous to the
public.    Even though the numerous other trains were not
those of appellant, if they made this crossing more dan-
gerous appellant was bound to exercise a degree of care
commensurate with this danger, and it is held to the same
degree of care as though it owned the track and con-
trolled and operated every train run on these tracks.
(*Illinois Central Railroad Co.* v. *Kanouse,* 39 Ill. 272; *Wiscon-
sin Central Railroad Co.* v. *Ross,* 142 id. 9.)    "Where the sur-
rounding circumstances render the crossing especially
dangerous to travelers on the highway, as when the line
is curved or there are obstructions to the view, it is the
duty of the railway to take precautions commensurate to
the danger."    (Patterson on Railway Accident Law, sec.
170.)    To the same effect, also, is *Wabash, St. Louis and Pa-
cific Railway Co.* v. *Wallace,* 110 Ill. 114.    This rule has been
followed in this State by holding that it is proper to show
that the view at the crossing of the railroad and highway
was obstructed by a heavy growth of timber or foliage,
even though not on the company's right of way.    (*Peoria,
Pekin and Jacksonville Railroad Co.* v. *Siltman,* 88 Ill. 529.)
And also that in a populous city, where many people pass
over a crossing, it is proper to show that no flagman was
at the crossing, even though no statute or ordinance re-
quired one.    (*Chicago and Iowa Railroad Co.* v. *Lane,* 130 Ill.
116.)    It was not error, therefore, to permit plaintiff to
show, as a circumstance, that trains were in the habit of
passing over this crossing in rapid succession.

Under the assignment of error as to the admission of
improper evidence by the trial court, objection is also
made to the testimony of certain non-expert witnesses

on the question of the mental impairment of appellee.
A number of such witnesses were called,—relatives and
persons with whom and for whom appellee had worked.
The testimony of such witnesses,—people of good com-
mon sense,—is admissible and is competent testimony.
(*Rutherford* v. *Morris*, 77 Ill. 397; *Morse* v. *Crawford*, 17 Vt.
499.)   Non-expert witnesses having stated their observa-
tions and the facts attendant upon the condition of a
person before any mental impairment and such observa-
tions and facts after the alleged impairment, are per-
mitted then to state their conclusions or opinions based
on such facts or observations, and may make comparison
of the mental condition of such person before and after
an injury which is alleged to have resulted in affecting
the mind.   It is not necessary that the impression testi-
fied to must have been formed at the time the particular
conduct or fact was observed.   It may be the result of
the observation of a continued condition or series of
facts.   While the record discloses that the answers on
this branch of the case were in a manner not responsive
to the questions, it does not appear that any specific ob-
jections were made at the time, and we perceive no harm-
ful error in the ruling of the trial court in the matter.

Reversal of this case is also urged on the ground of
improper remarks made by the counsel for appellee in
the argument of the case before the jury.   In his con-
cluding remarks counsel for appellee used the language
complained of, as follows :  "The plaintiff in this case is
poor.  He has not got the unlimited wealth of the defend-
ant in this case.   He can not call these gentlemen and
pay them $150 for coming upon the stand.   It was ad-
mitted, and it was stated in the presence of the jury by
learned counsel, that Mr. Fenger was a high-priced man,
that the gentleman whom he called upon the stand was
a high-priced man; and I say to you we can not afford to
call high-priced men to give opinions.  Counsel on the
other side put a high-priced man on the stand, but he did

not ask his opinion. You will remember that when I asked Dr. Church as to what really the mental condition of this boy was, he said he could not answer until I paid him,—he wanted his pay. He had a right to demand it. You cannot compel a doctor to give his opinion any more than you can compel a shoe-maker to deliver a pair of shoes free of charge. This is his privilege; but it does seem to me that if I was already in court testifying for one side that had paid me, that I would not hesitate to tell the whole truth. If Dr. Church would have been satisfied or would have believed that this boy's mind was not affected,—if he would have believed that the boy was not insane,—I ask you, would not astute counsel have asked him that question?" Comment had been made, in argument, by counsel for appellant, as to the failure of appellee to call Dr. Fisk, a specialist, as a witness. It appears that appellee had once visited this doctor's office, but the record does not disclose that this doctor had treated him. The argument of appellant's counsel was therefore not called for by anything in the record, and the remarks of counsel for appellee above quoted, while improper under ordinary circumstances, were called forth by the improper remarks of opposing counsel. It is the duty of the trial court to control counsel in their remarks to the jury, and by pointed rebuke, or otherwise, remove any undue effects which improper remarks might have. We are not inclined, in this case, under all the circumstances, to hold that the remarks complained of should cause a reversal.

Error is urged in the action of the trial court in giving to the jury the second instruction asked by appellee, which is as follows:

"The court instructs the jury that there was no absolute duty imposed by law on the defendant to maintain either gates or a flagman at the crossing in question, and if you believe, from the evidence, that there were no gates or flagman there at the time of the alleged injury,

that is not of itself evidence of negligence on the part of defendant. The plaintiff does not allege or claim any negligence on part of defendant in regard to this.   Evidence as to whether there were gates or a flagman at the crossing in question at the time of the alleged injury was admitted by the court, and should be considered by the jury, not as tending, of itself, to establish negligence, but solely for the purpose of showing the general condition of things at the locality of such crossing at the time of the alleged injury, so as to assist the jury to determine, from all the circumstances and evidence in the case, and under the instructions of the court, whether the defendant was guilty of negligence, as charged by the plaintiff in his declaration."

The circuit court had admitted evidence on the trial showing that there were no gates or flagman at the crossing in question.   Under the rule announced in *Chicago and Iowa Railroad Co.* v. *Lane*, 130 Ill. 116, this was competent, in connection with proof of the condition of things, in respect to travel and otherwise, in that locality, and on the question of the care and caution on the part of appellant in running its trains in accord with public safety. We do not deem it necessary to discuss this instruction further than to say that it is fully in accord with the views we have expressed in the case of *Chicago and Iowa Railroad Co.* v. *Lane*, *supra*, and that it states the law applicable to this case.

This court is asked to reverse the judgment in this case on the ground that the plaintiff himself was guilty of such contributory negligence that the court below should have instructed the jury to return a verdict for the defendant. The weight of the evidence in the case shows that the plaintiff was proceeding west on Fifty-third street; that he passed around the cars standing on the first track,—a side-track,—which tended to prevent his view of any train approaching from the north.   It appears that his attention was naturally engaged by the

moving train on the third track, which blocked the cross-ing, and that the short time he stopped on the second track was sufficient for him to be struck by appellant's train. The engine was running tender forward, and those in charge of it either could not see the track or were not on the lookout as they should have been in approaching a dangerous crossing, as they knew nothing of the acci-dent until they had run by some distance. There is a conflict in the evidence as to whether a bell was rung or whistle sounded, employees of appellant testifying in the affirmative, and three disinterested witnesses, near enough to have heard, say that neither was done. The entire evidence, both of appellee and appellant, shows that the train was running at a speed in violation of the ordinances of the town of Lake. It cannot be said, there-fore, there was no evidence tending to show negligence on the part of appellant and tending to show appellee was in the exercise of ordinary care. Whether the evi-dence fully establishes a fact of this character is not determined as a question of law. The rule may be de-clared settled in this State, that where there is evidence which, if true, tends to establish the facts necessary and sufficient to sustain a verdict, it is not error to refuse a peremptory instruction to find for defendant. *National Syrup Co.* v. *Carlson,* 155 Ill. 210; *Wight Fire-Proofing Co.* v. *Poczekai,* 130 id. 139; *Hodges* v. *Bearse,* 129 id. 87; *Chicago and Northwestern Railroad Co.* v. *Dunleavy,* id. 132; *Chicago and Northwestern Railroad Co.* v. *Snyder,* 128 id. 655; *Ham-burg-American Packet Co.* v. *Gattman,* 127 id. 598; *Lake Shore and Michigan Southern Railroad Co.* v. *O'Conner,* 115 id. 254.

The verdict and judgment in this case were for $10,000, and it is urged that sum is excessive in comparison with the extent of the injuries received by appellee. We are precluded by the judgment of the Appellate Court from a consideration of that question. It is incumbent on the trial and Appellate Courts to guard carefully, and espe-cially in actions of this character, the interests of both

plaintiff and defendant in matters wherein their judgment is final.

A careful and extended examination of this record develops no error that should cause a reversal of this judgment, and the judgment of the Appellate Court is therefore affirmed. *Judgment affirmed.*